**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 15-14057-CR-ROSENBERG/LYNCH**

UNITED STATES OF AMERICA,
         Plaintiff,

v.

MICHAEL EDWIN HARDING,
         Defendant.

**GOVERNMENT'S SENTENCING MEMORANDUM IN SUPPORT OF A LIFE SENTENCE**

The United States of America, through its undersigned Assistant United States Attorneys, for the reasons stated below, request that this Court sentence the Defendant to a term of life in prison.

**INTRODUCTION**

What is justice? Justice is often used interchangeably with the word "fairness." In the sentencing context it means to provide just punishment for the offense. Sentencing Guidelines aside, this Court must ask itself – "What is a just or fair sentence for a father who murders the innocence of his two young step-daughters?" "What is a just or fair sentence for a father and husband who condemns his wife and daughters to a lifetime of mental anguish?" In the government's view, the only fair and just result is a sentence of life imprisonment.

**THE DEFENDANT'S CRIMES AGAINST INNOCENT CHILDREN**

On February 22, 2016, the Defendant pled guilty to three counts of Distributing Material Involving Sexual Exploitation of Minors, and Possession of Material Involving Sexual Exploitation of Minors. The Defendant also pled no contest to Attempt to Coerce and Entice a Minor to Engage in Sexual Activity, and Production of Child Pornography. The facts supporting

1

each count were recited during the plea colloquy.  Additionally, the facts supporting each count, as well as the specific offense characteristics, are set forth in the Presentence Investigation Report.  The Court has been provided evidence under seal.  Additional facts will be presented at the sentencing hearing.

## THE CIRCUMSTANCES AND NATURE OF THE OFFENSES

A sentence of life imprisonment is a reasonable and just sentence based on the nature of the Defendant's multiple offenses and the totality of the circumstances.  The Defendant's advisory guideline range is life.  The Defendant's total offense level exceeds the highest total offense level on the guideline sentencing table.  No valid legal or factual reason exists that would justify a sentence less than life.  Life imprisonment is the only sentence sufficient, but not greater than necessary, to comply with the purposes set forth in Title 18, United States Code, Section 3553(a)(2).  Regardless of any guideline calculation, the aggravating factors in this case so far outweigh any mitigating factors that a life sentence is the only reasonable sentence.

### The Defendant Sexually Battered Prepubescent Children

The sexual abuse of children was more than a fantasy for the Defendant.  The Defendant, on multiple occasions, sexually abused two children ages 5 and 8 who were in his care.  The Defendant also attempted to provide one of those children to another pedophile, to be sexually abused, for the purpose of gaining access to innocent children the Defendant intended to sexually abuse.  In text messages written by the Defendant, he graphically described the sexual acts he performed on C.W.  On multiple occasions, the Defendant subjected his two young children to oral, anal, and vaginal sex acts.  The acts of the Defendant were sadistic both because of nature of the particular acts and because the acts were performed on children of such young age and small frames.  To memorialize his experience of pleasure, the Defendant chose to video tape 8 year old C.W. performing oral sex on him.  The Defendant only regretfully erased that video

because he was afraid of getting caught. While the Defendant may regret getting caught and facing punishment, after reading the Defendant's chat messages, it is impossible to believe that he would have any sincere remorse about what he has done to victimize young children.

### The Defendant Promoted Sexual Battery of Prepubescent Children

The Defendant's interaction with other pedophiles on-line both directly and indirectly encouraged them to sexually abuse young children. The encouragement was accomplished through both chat messaging and the distribution of child pornography. The Defendant engaged in sexually explicit conversations with other pedophiles in which the participants enthusiastically exchanged extremely explicit descriptions of the sexual abuse committed on prepubescent children. The conversations and direct encouragement demonstrated to other people that the Defendant was accepting of their behavior. The conversations also served to arouse the sexual desire of other men to have sex with prepubescent girls. The Defendant directly encouraged other people to seek out sexual contact with children. For example, during one chat conversation, a man commented that the Defendant was lucky because he had young children in the home with whom he was able to "play with" (a term used by pedophiles to refer to sex acts with children). The other man commented that the Defendant was lucky to find a woman with young children. The Defendant, in turn, remarked that there are many single women with children out there, and encouraged the other pedophile to form a relationship with a woman who has young children.

The distribution of child pornography by the Defendant promoted child sexual abuse. For example, one of the videos he distributed in the chat room "#toddlerfuck" shows a man's penis ejaculating on the vagina of what appears to be a preschool or grade school age girl. The distribution of this image could only serve to further sexually arouse other men present in the chat room. The distribution of child pornography leads other people to believe that sexual abuse

of children is acceptable and that distributing images of that abuse is acceptable. Without someone distributing child pornography, they would be unable to obtain it. During chat conversations, the Defendant encouraged both the production and distribution of child pornography.

### The Defendant Contributed to the Indefinite Victimization of Children

The Defendant's distribution and possession of child pornography served to further victimize the children shown in the still images and videos. The images distributed on the internet have the potential of lasting forever. The children in those images will live the remainder of their life knowing that someone is trading, for personal gratification, images of the worst experience in their life. The term "series" refers to a group of images/videos that are linked by a common victim, offender or location. "Known series" refers to a series previously encountered by law enforcement. "Identified series" refers to a group of images/videos where law enforcement has identified the victim(s) depicted. The Defendant was in possession of over 2000 still images of child pornography and over 130 videos of child pornography. A NCMEC search of the files possessed by the Defendant identified 94 known series. Therefore, there are at least 94 separate victims depicted in the images possess by the Defendant. The known series were produced in at least 20 countries around the world, including the United States.

### The Defendant Collected Sadistic Images and Videos

The types of child pornography in the Defendant's collection ranged from simply offensive to patently disturbing. The offensiveness of the pornography ranged from close up images of prepubescent genitals, to lengthy videos of grade school age girls being orally, vaginally and anally penetrated with objects, fingers and penises. Some of the images were purely sadistic. For example, the Defendant was in possession of an image depicting a young girl, lying on a bed wearing a bikini, hogtied with a large yellow rope. The large yellow rope

4

also served as a gag in her mouth. That image will forever move around the world on the internet because of people like the Defendant. That image will forever serve to gratify the prurient interest of pedophiles around the world. The girl, hogtied with yellow rope, will always know that image is on the internet.

### The Children in the Defendant's Collection Were in Pain

"Point of view" images (videos and photos taken from the vantage point of the offender), are part of the Defendant's collection. The Defendant also possessed child pornography videotaped from the vantage point of an observer in the room. Absent from any of these images is a video or photograph taken from the vantage point of the child. No pedophile would like to empathize with a victim who, at the age of 5 or 10 years old, is being orally, vaginally and anally penetrated by objects, fingers, and penises; objects disproportionately large in relation to the small frame of the child. The pedophile does not empathize with their victim's physical and mental pain. The child's vantage point is not considered by the pedophile, but must be considered by this Court.

In their distorted view of sex, people like the Defendant can be seen interpreting the moans and screams of the children as being those of pleasure not pain. There is such a lack of empathy that it can only be described as evil. In one of the Defendant's chats, he describes to another pedophile how he and his 9 year old victim are "working" on getting his penis inside her vagina. He mentions nothing of her pain. In fact, he extols how he doesn't like causing physical pain. Such a statement is made in a state of clear denial on his part. In one of the videos possessed by the Defendant, a man wearing a clown mask forcefully penetrates a young girl with a large sex toy. The groans are clearly from pain; not from pleasure. The Defendant chose to collect each video and still image depicting the pain of a young child.

**THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

In light of all the facts and circumstances in this case, the history and characteristics of the Defendant should be considered aggravating and not mitigating. There is no question that the Defendant knew the criminal nature of his actions and that he actively, consciously, and knowingly, chose to violate the laws protecting children. The Defendant was a police officer. Rather than enforcing the law, he chose to violate the law for his own personal sexual gratification and the gratification of other pedophiles. And he did this while on duty in uniform.

**Any Prior Abuse Does Not Justify Victimizing Others**

The Defendant has provided an uncorroborated account of how he was victimized as a child. Regardless of what impact those events may have had on his life, they serve as no justification for his choice to violate the law and abuse young children for his personal gratification. To whatever degree those events may explain the Defendant's behavior; they do nothing to mitigate his willful choice to violate the law. *See generally* Bruce J. Winick, *Sex Offender Law in the 1990s: A Therapeutic Jurisprudence Analysis,* 4 Psychol. Pub. Pol'y & L. 505, 524 (1998) ("People diagnosed with pedophilia do not molest children in the presence of police officers or in other situations presenting a high likelihood of apprehension. Rather, they act with stealth, deception, and premeditation in an effort to avoid detection. This is purposeful, planned, and goal-directed conduct, not spontaneous and uncontrollable action or action that is substantially beyond the individual's ability to avoid."); *id.* at 523–24 ("There is nothing in the diagnostic criteria for pedophilia or any of the other paraphilias that suggests that individuals diagnosed with these disorders suffer from any cognitive impairment that affects their ability to understand the wrongfulness of their conduct or that renders them irrational in any respect or unable to control their actions.... Moreover, there is nothing in the clinical literature that suggests that sex offenders are unable to exercise self-control.").

## THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE

A sentence of life imprisonment is necessary to recognize the seriousness of the offenses. Every child mentioned in this case was forced, coerced, or encouraged, to participate in acts they did not desire. Quite simply, prepubescent children do not know about or desire sexual contact. Regardless of this fact, the children were perceived by their offenders as nothing more than an object to be used for their own gratification. Not for one moment did the Defendant or other offenders give consideration to the lifelong harm they were inflicting on these children.

### The Defendant's Intentions were Callous and Self Serving

In this case, C.W. was viewed by the Defendant as a commodity to exchange in order to gain access to another child he sought to sexually abuse. The use of one person merely as a means to an end is a great moral wrong. It is almost impossible to conceive of a worse evil. For children to be subjected to such disgusting sexual acts only serves to amplify the moral wrong being perpetrated against them. Anything less than life in prison would fail to reflect the serious nature of these offenses.

### The Degree of Harm is Extensive

A life sentence reflects the degree of harm the Defendant did to so many children. The still images and videos represent not just a particular day or event; they represent the image that victims carry in their memories for the remainder of their lives. The victims will always be looking, in their memory, toward the offender who is naked, aroused, and in total control.

The Eleventh Circuit in *United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010), analyzed the harm cause by the sexual abuse of children. The following paragraphs were pulled from the body of the *Irey* opinion. Much has been said to describe and emphasize the grave harm that sexual abuse of children inflicts on its victims. Some of the best and most recent descriptions of

that harm can be found in *Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641 (2008). Although the Court by a 5 to 4 margin decided that capital punishment could not constitutionally be imposed for the rape of a child, all nine justices agreed that sexual abuse of children inflicts enormous harm on the victims. The majority acknowledged that:

> Here the victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood.... Rape has a permanent psychological, emotional, and sometimes physical impact on the child. We cannot dismiss the years of long anguish that must be endured by the victim of child rape.

*Id.* at 2658 (citations omitted).

The four dissenting justices in *Kennedy* believed that child rape was such a serious crime that death could be imposed as punishment for it. *Id.* at 2677–78 (Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting). They stressed the devastating, long-term effect that rape has on children. *See id.* at 2677 ("The immaturity and vulnerability of a child, both physically and psychologically, adds a devastating dimension to rape that is not present when an adult is raped. Long-term studies show that sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." (citations and quotation marks omitted).

Even before the *Kennedy* opinions, the Supreme Court had long recognized that childhood sexual abuse has devastating and long-lasting effects on its victims. *See New York v. Ferber*, 458 U.S. 747, 758 n. 9 (1982) ("It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." (citing Schoettle, *Child Exploitation: A Study of Child Pornography,* 19 J. Am. Acad. Child Psychiatry 289, 296 (1980)).

The Defendant's crimes warrant a sentence of life in prison because of both the quality and the quantity of harm inflicted.  He performed and promoted some of the vilest acts that can be committed against any person.  The fact that he chose innocent children to victimize makes the crimes even more despicable.

### The Defendant's Actions Harmed His Family and The Community

Beyond victimizing innocent children, the Defendant's actions harmed both his family and the community.  The fallout of his choices have been devastating.  The only person responsible is the Defendant.  His wife is left to care for three children.  The children and their mom are now fearful and untrusting of other people.  She will no doubt never trust another man to be around her children.  The child fathered by the Defendant will be without a dad.  The Defendant's arrest and conviction will no doubt tarnish the perception of law enforcement in the community.  This case and the Defendant's acts will be in the mind of the public when they see police officers.

### THE SENTENCE IMPOSED MUST PROMOTE RESPECT FOR THE LAW

A sentence of life imprisonment would promote respect for the law and would be sufficient but not greater than necessary as applied to the facts and circumstances of this case. The chat messages demonstrate the utter lack of respect for the law on the part of the Defendant and other pedophiles.  Their only concern for the law is that someday they may get caught.

Coupled with their utter disregard for the law is the glorification of the greatest moral wrongs.  For example, one person chatting with the Defendant wrote a statement praising the child pornography series produced by "Mastadon."  "Mastadon" is a producer of child pornography revered by pedophiles.  The Defendant replied and expressed his admiration for "Mastadon."  In a videos produced by "Mastadon," (available for the Court to view) a grade school age girl is seen wearing a tiger outfit.  She is made to act like a tiger stalking it's pray and

eating an erect adult penis. In another "Mastadon" video, the same girl is videotaped masturbating and anally penetrating herself. The male is later videotaped as he ejaculates on her chest. The video ends with the text credit, "To all our fans. Mastadon and April."

A life sentence will provide general deterrence to members of a community that interact with complete indifference to the rules and norms of a civilized society. A life sentence would send a message of condemnation to a community that has an utter disregard for the laws protecting children.

## THE SENTENCE MUST PROVIDE JUST PUNISHMENT FOR THE OFFENSE

A life sentence is just punishment for the harm inflicted by the Defendant. The victims in this case, both the children the Defendant abused, as well as the children in the images of child pornography, must suffer for the remainder of their life with the experience of being sexually abused. They were innocent young children who did not choose those memories and pain. They have done nothing wrong. One must, when assessing these types of cases, empathize with the child who was approached by an offender and was forced, coerced, or encouraged, to participate in an act they did not desire. By their very nature, they did not have the physical or psychological ability to resist. For the remainder of their lives, they will remember the physical harm of having a penis, fingers, and objects forced into their vagina, mouth and rectum. They must remember moments when they had semen on their face or in their body, or they will remember when they were bound and hidden away from the people in their life who could protect them.

The images will never go away for these children, even as they grow into adulthood. Because the victims will need to live the remainder of their life with the psychological and physical scars of being sexually abused, the Defendant should serve the remainder of his life with a punishment proportional to the harm they have suffered. Incarceration represents a

deprivation of pleasure.  That deprivation is proportional to the mental anguish and lack of pleasure suffered by the many sexually abused children involved in the offenses in this case. The Defendant's punishment should be for his whole life.  While the Defendant may be a young man, the starting point for his life sentence will be much later in life than that of the children he abused or encouraged others to abuse.  Without hesitation or empathy, the Defendant victimized children and encouraged others to victimize children.   Without hesitation, the court should impose a life sentence.

The § 3553(a)(2)(A) consideration is the "just deserts" concept, which carries the need for retribution, the need to make the punishment fit the crime, and the need not just to punish but to punish justly. In *U.S. v. Pugh,* 515 F.3d 1197 (11th Cir. 2008), the Eleventh Circuit quoted from the Senate Report regarding this provision:

> This purpose—essentially the "just deserts" concept—should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the Defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. From the Defendant's standpoint the sentence should not be unreasonably harsh under all the circumstances of the case and should not differ substantially from the sentence given to another similarly situated Defendant convicted of a similar offense under similar circumstances.

515 F.3d at 1195 (quoting S.Rep. No. 98–225, at 75–76, 1984 U.S.C.C.A.N. 3258–59); *see also United States v. Lychock*, 578 F.3d 214, 220 (3rd Cir.2009); *United States v. White Face*, 383 F.3d 733, 740 (8th Cir.2004); *United States v. Beasley*, 12 F.3d 280, 283 (1st Cir.1993).

When child pornography is produced in conjunction with the sexual abuse of children, as it was here, the harm to the child victims is magnified and perpetuated. *See Ferber*, 458 U.S. at 759 (stating that "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation"); *Pugh,* 515 F.3d at 1197–98 & n.

12 (citing extensive congressional findings about the harm caused by child pornography and recognizing that "[i]n light of these detailed legislative findings and numerous legislative enactments, we cannot help but underscore the seriousness of this crime"); *see also* Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109–248, § 501(2)(D), 120 Stat. 587, 624 (2006) (codified at 18 U.S.C. § 2251 note) ("Every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse.").

Because the punishment should fit the crime, the more serious the criminal conduct is the greater the need for retribution and the longer the sentence should be. The seriousness of a crime varies directly with the harm it causes or threatens. It follows that the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime. Child sex crimes are among the most egregious and despicable of societal and criminal offenses. A life sentence is a punishment that the Defendant justly deserves.

## **THE SENTENCE MUST AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT**

A sentence of life imprisonment would be sufficient but not greater than necessary to provide deterrence to other individuals engaging in this type of conduct. Sexual desire may be very strong, but pedophiles do not necessarily need to act on their desire. Because of evolving technology, the internet is becoming increasingly inaccessible to law enforcement. Child abusers have been taking advantage of the ever increasing ability to evade detection by law enforcement. As the probability of getting caught decreases, the severity of the punishment must increase to deter offenders from risking apprehension. A life sentence will send a message that it is a crime and a great moral wrong to obtain sexual gratification from viewing images of abused children,

producing child pornography, and exchanging children for sex. It would send the message that, if you do those things, you should expect to go to prison for the remainder of your life.

A life sentence represents how we as a society condemn these acts. This case will undoubtedly be reported in the press. There are offenders victimizing children every hour of every day. The people who abuse children should know that with each chat, exchanged e-mail, or downloaded image, they have the possibility of being imprisoned for the remainder of their life. *See, e.g., Ferber*, 458 U.S. at 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product."); *Osborne v. Ohio*, 495 U.S. 103, 109–10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.").

Imposing a lighter sentence on one convicted of a child pornography offense would tend to undermine the purpose of general deterrence, and in turn, tend to increase the child pornography market. The problem of a missed opportunity for deterrence is compounded when the crime involves not just possession but also distribution of child pornography. *E.g., United States v. Goff*, 501 F.3d 250, 261 (3rd Cir. 2007) ("[D]eterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing...."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.") The amount and type of child pornography possessed by the Defendant, coupled with his other criminal acts, justifies a life sentence.

## A SENTENCE OF LIFE IN PRISON IS NECESSARY TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT

Only a lifetime of imprisonment will be sufficient to prevent the Defendant from offending again. The Defendant's chat messages demonstrate that abusing children was a deep seeded part of his psyche. Data found on the Defendant's electronic devices indicates that he has been collecting and viewing child pornography since at least 2008. He had been actively abusing prepubescent children for years and there was no indication that he was going to stop. Had it not been for the efforts of Agent Brian Ray and the Office of Homeland Security Investigations there can be no doubt that he would be victimizing C.W. and H.W. today.

The chat messages demonstrate the Defendant's inability to abide by the law. He chose to view and distribute child pornography while he was not only employed as a police officer; but while he was on duty. The Defendant has a pervasive and deep-seeded attraction to prepubescent girls. He specifically stated in one of the text messages that he is sexually attracted to girls in the prepubescent age range.

The Defendant's behaviors are almost impossible for law enforcement to monitor. He was hired and worked at a law enforcement agency, yet no one had any indication that he had been abusing children and trading child pornography. His wife had no indication he was abusing children. The Defendant worked hard to hide his behavior. He used pseudonyms for his screen names and accounts. He possessed a TOR browser, which was used to prevent law enforcement from identifying him. As the means for evading detection become more sophisticated, the only way to ensure the Defendant will not offend again is to have him incarcerated for the remainder of his life. His desire to offend and his utter disregard for the law are so deep-seeded that the only way to protect future victims is to incarcerate the Defendant for the remainder of his life.

## THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT

A life sentence for the Defendant would not be disproportional to sentences imposed in other cases when the nature of the offenses is considered. The consideration of the advisory guidelines range is important, because the guidelines "are an indispensable tool in helping courts achieve Congress's mandate to consider 'the need to avoid unwarranted sentence disparities' among similarly situated Defendants," *United States v. Hunt*, 459 F.3d 1180 (11th Cir. 2006); 18 U.S.C. § 3553(a)(6). Even though not bound by the guidelines, a sentencing court may not give them so little consideration that it amounts to "not giv[ing] any real weight to the Guidelines range in imposing the sentence." *Pugh*, 515 F.3d at 1200; *see also Booker*, 543 U.S. at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). The Defendant scores life. He should receive a sentence of life in prison because there is no reason to vary and the sentence would be proportional to other sentences imposed for similar conduct. While no set of aggravating and mitigating factors is exactly the same, the following cases are similar to the Defendant's case.

The following cases are from within the Southern District of Florida: *United States v. Scott Michael Williams* (12-10029-CR-KING) 48, pleaded guilty to two counts of production of child pornography, one count of distribution of child pornography, two counts of possession of child pornography and possession of a firearm by a felon. These charges stem from photographs found on an external hard drive attached to Williams's computer that show two prepubescent girls exposing their genitals and engaged in lewd and lascivious acts with the Defendant. The girls were relatives of the Defendant. He too claimed he was sexually abused as a child. He was sentenced to 100 years in federal prison by U.S. District Court Chief Judge Federico A. Moreno.

*United States v. Edgar Geovani Esquivel Castillo* (1:10-CR-20120-DMM) pleaded guilty to four counts of production of child pornography, and one count of possession of child pornography. The evidence showed that he produced videos of himself engaged in sexually explicit conduct with a three-year-old female he babysat at his home. Total offense score was 51, but was reduced to 43, the maximum possible offense level. Castillo had a criminal history category of I. He was sentenced to thirty years for each of the production convictions and ten years for the possession conviction, to run consecutively, for a total sentence of 1,560 months' imprisonment by United States District Judge Donald M. Middlebrooks. *United States v. Leslie Grey Vanaman* (13-80088-CR-ZLOCH) 44, pleaded guilty to receipt and possession of child pornography (USAO had charged but agreed to dismiss the production count). The evidence showed that he sent erotic images of children in exchange for images of child pornography. He also lived in a naturist resort (nudist colony) where he took posed pictures of 4-5 children, two of which were identified and were eight and eleven years old (some of which qualified as CP). He had a prior possession of child pornography conviction. His guidelines called for life imprisonment. He was sentenced to 720 months - the stacked statutory maximum term of the two counts, by United States District Judge William J. Zloch.

In cases where the defendant engaged in sexual activity with children, other courts have sentenced defendants to the advisory guidelines sentence or beyond. *United States v. Huskey*, 349 Fed.Appx. 495 (11th Cir.2009) (70 year sentence for Defendant who fell within criminal history category I, who engaged in anal, oral, and vaginal sex with his daughter, and penetrated her vagina with objects while she was between the ages of 6 and 9; recorded the abuse in photographs and on videotapes, and traded images of the abuse over the internet for other child pornography); *United States v. Oliver*, 281 Fed.Appx. 898 (11th Cir.2008) (130 year sentence for the Defendant, with no criminal record that was mentioned, who produced images of himself

16

molesting a single victim, his 6–year–old granddaughter, and distributed those images over the internet); *United States v. Foster*, 209 Fed.Appx. 942 (11th Cir.2006) (life imprisonment for the Defendant who fell within criminal history category I, and who during a 4–year period engaged in oral and vaginal sex with a single victim who was less than 12 years old when the abuse began); *United States v. Sarras*, 575 F.3d 1191, 1208, 1220-21 (11th Cir. 2009) (upholding as reasonable a 100-year sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim); *United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for abusing and photographing three boys between the ages of 8 and 16 based on consecutive statutory maximums under 18 U.S.C. § 2251(e) and § 2252A(b)(1)); *United States v. Kapordelis*, 569 F.3d 1291, 1318-19 (11th Cir. 2009) (upholding as reasonable a 420-month sentence, which represented an upward variance from the 262-327-month advisory guidelines range and included 240-month sentences on counts charging production of child pornography under § 2251(a) and 180-month consecutive sentences on counts charging receipt of child pornography under § 2252A(a)(2)(A)); *United States v. Huffstatler*, 561 F.3d 694, 698 (7th Cir. 2009) (upholding as reasonable an above-guidelines, 450-month sentence for producing pornographic pictures of a 14-year-old boy); *United States v. Raplinger*, 555 F.3d 687, 695 (8th Cir. 2009) (upholding as reasonable a 457-month sentence for photographing and having sexual intercourse with a 15-year-old girl), cert. denied, 129 S.Ct. 2814 (2009); *United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as reasonable a 750-month (62.5 year) sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters), cert. denied, 129 S.Ct. 962 (2009).

Sentencing the Defendant to life in prison would be a sentence in line with many other sentences. One set of facts sets him apart and provides further and definitive justification for a

life sentence. He callously offered to swap C.W. with another man so he could have sex with the other man's child. Her life, like the lives of so many, was the nightmare providing the Defendant with pleasure.

WHEREFORE, the United States of America respectfully requests that the Defendant be sentenced to spend the remainder of his life in the custody of the Bureau of Prisons.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: *s/ Daniel E. Funk*
Daniel E. Funk
Assistant United States Attorney
Daniel.Funk@usdoj.gov
United States Attorney's Office
101 South U.S. Hwy. 1, Ste. 3100
Fort Pierce, Florida 34950
Telephone: 305-905-7509

By: *s/ Russell R. Killinger*
Assistant United States Attorney
Russell.Killinger@usdoj.gov
United States Attorney's Office
101 South U.S. Hwy. 1, Ste. 3100
Fort Pierce, Florida 34950
Telephone: 772-466-0899

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic filing on May 13, 2016, and on Defendant's counsel of record on the Service List below.

 */s/Daniel E. Funk*
DANIEL E. FUNK
Assistant United States Attorney

SERVICE LIST

| Daniel E. Funk<br>Assistant United States Attorney<br>Daniel.Funk@usdoj.gov<br>Russell R. Killinger<br>Assistant United States Attorney<br>Russell.Killinger@usdoj.gov<br>United States Attorney's Office<br>101 South U.S. Hwy. 1, Ste. 3100<br>Fort Pierce, Florida 34950<br>Telephone: 772-466-0899<br>Attorneys for the United States | Fletcher Peacock<br>Assistant Federal Public Defender<br>109 North Second Street<br>Fort Pierce, Florida 34950<br>Tel: 772-489-2123<br>Fletcher_Peacock@fd.org<br>Attorney for Michael Harding |
|---|---|